## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

KEITH M. REAGEN,

      Plaintiff,

      v.

MARTIN J. O'MALLEY,[1]
Commissioner of Social Security,

      Defendant.

CIVIL ACTION NO. 3:23-cv-00217

(SAPORITO, C.M.J.)

## <u>MEMORANDUM</u>

In this matter, the plaintiff, Keith M. Reagen, seeks judicial review of the final decision of the Commissioner of Social Security denying his applications for disability insurance benefits, pursuant to 42 U.S.C. § 405(g). The matter has been referred to the undersigned United States magistrate judge on consent of the parties, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

---

[1] Martin J. O'Malley became the Commissioner of Social Security on December 20, 2023. He has been automatically substituted in place of the original defendant, Kilolo Kijakazi. *See* Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security). The caption in this case is amended to reflect this change.

## I.    BACKGROUND

On January 23, 2019, Reagen protectively filed an application for disability insurance benefits asserting a disability onset date of December 31, 2017.[2] His application was initially denied by state agency reviewers on July 19, 2019, and upon reconsideration on November 5, 2019. The plaintiff then requested an administrative hearing.

A telephone hearing was held on November 10, 2021, before an administrative law judge, Richard E. Guida (the "ALJ"). In addition to the plaintiff himself, the ALJ received testimony from an impartial vocational expert, Lawrence Ostrowski. The plaintiff was represented by counsel at the hearing.

On December 3, 2021, the ALJ denied Reagen's application for benefits in a written decision. The ALJ followed the familiar five-step sequential evaluation process in determining that Reagen was not disabled under the Social Security Act. *See generally Myers v. Berryhill*, 373 F. Supp. 3d 528, 534 (M.D. Pa. 2019) (describing the five-step sequential evaluation process). At step one, the ALJ found that Reagen

---

[2] Reagen originally asserted a disability onset date of April 10, 2018, but he subsequently amended his alleged onset date to December 31, 2017.

had not engaged in substantial gainful activity during the period between his alleged onset date of December 31, 2017, and his date last insured, March 31, 2020. At step two, the ALJ found that Reagen had the severe impairments of: multiple sclerosis and obesity. At step three, the ALJ found that Reagen did not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Between steps three and four of the sequential-evaluation process, the ALJ assessed Reagen's residual functional capacity ("RFC"). *See generally Myers*, 373 F. Supp. 3d at 534 n.4 (defining RFC). After evaluating the relevant evidence of record, the ALJ found that Reagen had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b),[3] with the following limitations:

> [H]e may perform occasional postural movements but must never climb ladders, ropes, or scaffolds and must avoid concentrated exposure to fumes, odors, dusts, gases, poorly ventilated areas, dangerous machinery, and heights.

(Tr. 21.)

---

[3] The Social Security regulations define "light work" as a job that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighting up to 10 pounds." 20 C.F.R. § 404.1567(b).

In making these factual findings regarding Reagen's RFC, the ALJ considered his symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence and other evidence of record. *See generally* 20 C.F.R. § 404.1529; Soc. Sec. Ruling 16-3p, 2017 WL 5180304 (revised Oct. 25, 2017). The ALJ also considered and articulated how persuasive he found the medical opinions and prior administrative medical findings of record. *See generally* 20 C.F.R. § 404.1520c.

At step four, based on this RFC and on testimony by the vocational expert, the ALJ concluded that Reagen was unable to perform his past relevant work as a construction worker.

At step five, the ALJ concluded that Reagen was capable of performing other work that exists in significant numbers in the national economy. Based on his age, education, work experience, and RFC, and based on testimony by the vocational expert, the ALJ concluded that Reagen was capable of performing the requirements of representative occupations such as marker (DOT # 209.587-034), mail clerk (DOT # 209.687-026), or electrical accessories assembler (DOT # 729.687-010). Based on this finding, the ALJ concluded that Reagen was not disabled

during the relevant period for Social Security purposes.

The plaintiff sought further administrative review of his claims by the Appeals Council, but his request was denied on December 1, 2022, making the ALJ's December 2021 decision the final decision of the Commissioner subject to judicial review by this court.

The plaintiff timely filed his complaint in this court on February 6, 2023. The Commissioner has filed an answer to the complaint, together with a certified copy of the administrative record. Both parties have filed their briefs, and this matter is now ripe for decision.

## II.   DISCUSSION

Under the Social Security Act, the question before this court is not whether the claimant is disabled, but whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See generally* 42 U.S.C. § 405(g)(sentence five); *id.* § 1383(c)(3); *Myers*, 373 F. Supp. 3d at 533 (describing standard of judicial review for social security disability insurance benefits administrative decisions).

Reagen asserts on appeal that the ALJ's decision is not supported by substantial evidence because: (1) the ALJ failed to consider his obesity

impairment, as required by Social Security Ruling 19-2p; (2) the ALJ found certain of his impairments "not severe" at step two of the five-step sequential evaluation process, despite compelling evidence to the contrary; (3) the ALJ failed to properly evaluate prior administrative findings, including the medical opinions of non-examining state agency medical and psychological consultants; and (4) the ALJ failed to properly consider subjective evidence regarding Reagen's symptoms, including statements or testimony by Reagen himself.[4]

## A. Consideration of Obesity Impairment

The plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ failed to adequately consider Reagen's obesity, as required by Social Security Ruling 19-2p. The plaintiff, however, does not articulate any specific error by the ALJ, and he does not point to any particular functional limitations that result from his obesity.

---

[4] The plaintiff's brief articulated two conclusory, extremely general claims of error: (1) the ALJ's RFC determination failed to include all limitations caused by his severe impairments; and (2) the ALJ's RFC determination failed to include all limitations caused by impairments the ALJ found to be non-severe, or never mentioned. A close reading of the plaintiff's brief reveals that these very generalized grievances rest on the specific errors we have articulated above.

In Social Security Ruling 19-2p, the agency recognized that
"[p]eople with obesity have a higher risk for other impairments, and the
effects of obesity combined with other impairments can be greater than
the effects of each of the impairments considered separately." Soc. Sec.
Ruling 19-2p, 2019 WL 2374244, at *2. At step two of the five-step
sequential evaluation process, the ruling provided that, in evaluating
whether a claimant's obesity constitutes a severe impairment, the agency
would "consider all symptoms, such as fatigue or pain that could limit
functioning." *Id.* at *3. However, the ruling expressly noted that "[n]o
specific weight or BMI establishes obesity as a 'severe' or 'not severe'
impairment." *Id.* at *4. At step three of the five-step sequential
evaluation process, the ruling noted that "[o]besity is not a listed
impairment; however, the functional limitations caused by the [medically
determinable impairment] of obesity, alone or in combination with
another impairment(s), may medically equal a listing. *Id.* In determining
the claimant's RFC before steps four and five, the ruling provided that
"[w]e must consider the limiting effects of obesity when assessing a
person's RFC. . . . As with any other impairment, we will explain how we
reached our conclusion on whether obesity causes any limitations." *Id.*

At step two, the ALJ found Reagen's obesity to be a severe impairment. (Tr. 18.) The plaintiff does not challenge this finding.

At step three, the ALJ expressly considered Reagen's obesity, stating:

> There is no listing for obesity. The claimant's obesity was not associated with serious complications that would meet or medically equal the requirements of any other affected body system.

(Tr. 21.)

In determining Reagen's RFC between steps three and four, the ALJ expressly considered his obesity, stating:

> The record establishes the claimant has a history of obesity. Just prior to the alleged onset date in November 2017, the claimant's weight was 181 pounds. Treatment records from after the date last insured indicate that his weight increased to 253 pounds. Given that the claimant's height is 5 feet 7 inches and his weight is 253 pounds, his body mass index is 39.62, which is indicative of obesity. The undersigned has considered the impact of the claimant's weight on his overall conditions.

(Tr. 22 (citations omitted).)

The ALJ further addressed Reagen's obesity, stating:

> With regard to the claimant's obesity, treatment records fail to establish that the claimant reported symptoms related to his conditions prior to the date last insured. Nonetheless, the undersigned has

> considered the overall impact of the claimant's weight
> when assigning the residual functional capacity noted
> above.

(Tr. 23.)

Based on the foregoing, it is evident that the ALJ did indeed consider Reagen's obesity throughout the five-step sequential evaluation process, consistent with the agency's guidelines, including those set forth in Social Security Ruling 19-2p. While the plaintiff clearly disagrees with the ALJ's conclusions, beyond a generalized and unsupported assertion that his weight might potentially exacerbate his other impairments, he has failed to point to *any* evidence demonstrating functional limitations caused by his obesity beyond those found by the ALJ. *See Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) ("[E]ven if we assume . . . that [the claimant's] obesity could be a factor, [the claimant] has not specified how that factor would affect the five-step analysis undertaken by the ALJ, beyond an assertion that her weight makes it more difficult to stand, walk and manipulate her hands and fingers. That generalized response is not enough to require a remand . . . ."); *see also Carter v. Comm'r of Soc. Sec.*, 805 Fed. App'x 140, 143 (3d Cir. 2020) (holding that remand was not required where claimant relied on prior agency policy

ruling "stating that obesity *can* impair one's ability to perform basic work activities" but failed to "specify[] *how* her obesity . . . affected her ability to perform basic work activities"); *Woodson v. Comm'r Soc. Sec.*, 661 Fed. App'x 762, 765 (3d Cir. 2016) ("[The claimant] simply speculates about how his obesity might exacerbate other impairments . . . . But [the claimant] never points to specific medical evidence in the record to demonstrate that his obesity, in combination with other impairments, is sufficiently disabling."). "The ALJ's failure to explicitly delineate where obesity may have caused or contributed to specific symptoms and functional limitations does not undermine the entire analysis, when ultimately the ALJ properly characterized the symptoms and functional limitations." *Dietrich v. Saul*, 501 F. Supp. 3d 283, 294 (M.D. Pa. 2020).

Accordingly, we find the ALJ's evaluation of the claimant's obesity, either alone or in combination with other impairments, throughout the five-step sequential evaluation process, is supported by substantial evidence and was reached based upon a correct application of the relevant law.

### B. Step Two Severity Determination

The plaintiff contends that the ALJ erred in finding that various

other physical medical conditions were not severe impairments.

At step two, a claimant bears the burden of proving that he suffers from "a medically severe impairment or combination of impairments." *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). But the step-two inquiry is merely "a *de minimis* screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). "[T]he analysis at step two is wholly independent of the analysis at later steps. . . . [N]ot finding certain impairments severe at step two does not affect the ultimate disability determination." *Alvarado v. Colvin*, 147 F. Supp. 3d 297, 311 (E.D. Pa. 2015); *see also Orr v. Comm'r Soc. Sec.*, 805 Fed. App'x 85, 88 (3d Cir. 2020) ("[B]ecause the ALJ progressed to a later step, any error at Step Two would not alter that remainder of the five-step process, much less the overall outcome."); *Ray v. Berryhill*, 915 F.3d 486, 492 (7th Cir. 2019) (per curiam) ("Step two is a threshold inquiry; so long as one of a claimant's limitations is found to be severe, error at that step is harmless."); *Salles v. Comm'r of Soc. Sec.*, 229 Fed. App'x 140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in [the claimant's] favor at Step Two, even if he had erroneously concluded that some other impairments were nonsevere, any error was harmless.").

Here, the ALJ found in Reagen's favor at step two, finding that he had severe impairments, and then proceeded on to step three of the five-step sequential evaluation process. Thus, any error with respect to evaluation of the severity of any other impairments at step two was harmless and provides "no valid basis for remand." *See Orr*, 805 Fed. App'x at 88.

## C. Medical Opinions and Prior Administrative Findings

The plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ erred in his evaluation of conflicting medical opinions and prior administrative findings presented in the administrative proceedings below. As a preface, we note the well-established principle that, in evaluating the medical opinion evidence of record, an "ALJ is not only entitled, but required to choose between" conflicting medical opinions. *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [an ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). Moreover, "[i]n the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute [our

own] conclusions for those of the fact-finder.'" *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)). Ultimately, to reverse the ALJ's findings and decision, "we must find that the evidence not only *supports* [a contrary] conclusion, but *compels* it." *Immigration & Naturalization Serv. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992); *see also Smith v. Chater*, 99 F.3d 780, 782 & N.3 (6th Cir. 1996) (citing *Elias-Zacarias* in the context of social security disability benefits); *Hert v. Barnhart*, 234 F. Supp. 2d 832, 837 (N.D. Ill. 2002) ("The court may reverse the Commissioner's decision only if the evidence 'compels' reversal, not merely because the evidence supports a contrary decision.") (citing *Elias-Zacarias*).

Here, the plaintiff originally filed his administrative claim for benefits in January 2019. Thus, a relatively new regulatory framework governing the evaluation of medical opinion evidence applies to this case.

"The new regulations have been described as a 'paradigm shift' in the way medical opinions are evaluated." *Knittle v. Kijakazi*, Civil No. 1:20-CV-00945, 2021 WL 5918706, at *4 (M.D. Pa. Dec. 15, 2021). "Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source

opinions with treating sources at the apex of this hierarchy." *Densberger v. Saul*, Civil No. 1:20-CV-772, 2021 WL 1172982, at *7 (M.D. Pa. Mar. 29, 2021). Under this prior regulatory scheme, the Social Security Administration "followed the 'treating physician rule,' which required the agency to give controlling weight to a treating source's opinion, so long as it was 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and not 'inconsistent with the other substantial evidence' in the record." *Michelle K. v. Comm'r of Soc. Sec.*, 527 F. Supp. 3d 476, 481 (W.D. Pa. 2021). However, the regulations governing the evaluation of medical evidence were amended and the treating physician rule was eliminated effective March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844 (Jan. 18, 2017); *see also Densberger*, 202 WL 1172982, at *7–*8; *Michelle K.*, 527 F. Supp. 3d at 481. "The range of opinions that ALJs were enjoined to consider were broadened substantially and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis." *Densberger*, 2021 WL 1172982, at *7.

Under these new regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical

opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520(a), "Rather than assigning weight to medical opinions, [an ALJ] will articulate 'how persuasive' he or she finds the medical opinions." *Knittle*, 2021 WL 5918706, at *4; *see also* 20 C.F.R. § 404.1520. If a medical source provides one or more medical opinions, the agency will consider those medical opinions from that medical source together using the following factors: "(1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that 'tend to support or contradict a medical opinion or prior administrative medical finding.'" *Michelle K.*, 527 F. Supp. 3d at 481; *see also* 20 C.F.R. § 404.1520c(a); *Densberger*, 2021 WL 1172982, at *8. Under the new regulations, "[t]he two 'most important factors for determining the persuasiveness of medical opinions are consistency and supportability,' which are the 'same factors' that formed the foundation of the treating source rule." *Densberger*, 2021 WL 1172982, at *8; *see also* 20 C.F.R. § 404.1520c(b)(2); *Michelle K.*, 527 F. Supp. 3d at 481; *compare* 20 C.F.R.

§ 404.1520c(c)(1) (supportability), and *id.* § 404.1520c(c)(2) (consistency), *with* *id.* § 404.1527(c)(3) (supportability), and *id.* § 404.1527(c)(4) (consistency).[5] An ALJ is specifically required to address these two factors in his or her decision. *See* 20 C.F.R. § 404.1520(c)(b)(2); *see also* *Densberger*, 2021 WL 1172982, at *8; *Michelle K.*, 527 F. Supp. 3d at 482. "The ALJ may—but is not required to—explain how he considered the remaining factors." *Michelle K.*, 527 F. Supp. 3d at 482; *see also* 20 C.F.R. § 404.1520c(b)(2); *Densberger*, 2021 WL 1172982, at *8. "However, when the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered [the remaining] factors . . . ." *Densberger*, 2021 WL 1172982, at *8; *see also* 20 C.F.R. § 404.1520c(b)(3); *Michelle K.*, 527 F. Supp. 3d at 482.

---

[5] With respect to supportability, the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). With respect to consistency, the new regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2).

The prior administrative findings in this case included the opinions of two state agency psychological consultants, Melissa Franks, Psy.D., and John Gavazzi, Psy.D., both of whom determined that there was insufficient evidence in the claimant's medical records to establish any mental health impairments. (Tr. 64, 74.) In evaluating the psychological consultants' opinions, the ALJ found that:

> The opinions are supported by and consistent with the medical evidence of record, as the record did not contain sufficient evidence to determine the extent and severity of the claimant's mental health impairments at the time in which the determinations were rendered. Therefore, the opinions are persuasive.

(Tr. 24.)

The prior administrative findings in this case included the opinion of a state agency medical consultant, Chevaughn Daniel, M.D. Based on her review of Reagen's medical records, Dr. Daniel found Reagen capable of lifting or carrying up to 50 pounds occasionally and up to 25 pounds frequently, and standing, walking, or sitting up to 6 hours in an 8-hour workday, with no limitations to his ability to push or pull, including the operation of hand or foot controls. Dr. Daniel found no non-exertional limitations. In evaluating Dr. Daniel's opinion, the ALJ found that:

> This opinion is supported by and consistent with the

> medical evidence of record that shows the claimant had
> generally normal physical findings on examination
> including a normal gait, normal strength throughout,
> and normal sensation. It is also supported by and
> consistent with the conservative nature of the
> claimant's treatment and the overall stale nature of his
> conditions during the relevant period. However, the
> undersigned has reduced the residual functional
> capacity to account for the occasional limitations on
> examination, including findings of an unsteady gait
> and reduced sensation, as well as the claimant's
> subjective reports of symptoms. Therefore, the opinion
> is partially persuasive.

(Tr. 24.)

The prior administrative findings in this case included an earlier opinion by a state agency medical consultant, John Simmons, M.D., who determined that there was insufficient evidence in the claimant's medical records to establish any physical impairments. (Tr. 65.) In evaluating Dr. Simmons's opinion, the ALJ found that:

> This opinion is not supported by and is inconsistent
> with the medical evidence of record, as there was
> sufficient evidence to determine the extent and
> severity of the claimant's physical impairments at the
> time in which the determination was rendered.

(Tr. 24–25.)

The plaintiff objects to this evaluation of the state agency medical and psychological consultants' findings and opinions based on the fact

that, the consultants never actually examined Reagen in person. But the medical opinion of a non-examining medical source, such as a state agency medical or psychological consultant, may serve as substantial evidence to the extent the opinion is consistent with other medical evidence in the record. *See Nichols v. Comm'r of Soc. Sec.*, 404 Fed. App'x 701, 704–05 (3d Cir. 2010); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *My-Lein L. v. Comm'r of Soc. Sec.*, 551 F. Supp. 3d 100, 107 (W.D.N.Y. 2021); *Ortiz v. Comm'r of Soc. Sec.*, 309 F. Supp. 3d 189, 205 (S.D.N.Y. 2018).

The plaintiff also objects to the ALJ's evaluation of these findings and opinions on the ground that they were recorded more than two years before the administrative hearing in this matter. The hearing in this matter was conducted in November 2021, primarily because Reagen was incarcerated until his release in July 2021. The later of the prior administrative findings, which included the opinions of Dr. Daniel and Dr. Gavazzi, was recorded in November 2019, close in time to the plaintiff's date last insured. *See Steiner v. Berryhill*, No. 18-cv-00429, 2019 WL 903853, at *13 (S.D.W. Va. Jan. 14, 2019). Moreover, we note that the medical evidence suggests that Reagen's multiple sclerosis

condition remained stable while he was incarcerated, with nothing to suggest that it worsened during the relevant period. (*See, e.g.*, Tr. 1803.)

Accordingly, we find the ALJ's evaluation of the prior administrative findings concerning the plaintiff's physical and mental limitations, including the medical opinions of the state agency medical and psychological consultants, is supported by substantial evidence and was reached based upon a correct application of the relevant law.

### D. Subjective Evidence of the Plaintiff's Symptoms

The plaintiff appears to also contend that the ALJ's decision is not supported by substantial evidence because the ALJ erred in his evaluation of Reagen's symptoms, including subjective statements or testimony by Reagen himself. *See generally* 20 C.F.R. § 404.1502(i), ("Symptoms means your own description of your physical or mental impairment.").

Standing alone, a claimant's allegation of pain or other symptoms is not enough to establish an impairment or disability. 20 C.F.R. § 416.929(a); *Prokopick v. Comm'r of Soc. Sec.*, 272 Fed. App'x 196, 199 (3d Cir. 2008) ("Under the regulations, an ALJ may not base a finding of disability solely on a claimant's statements about disabling pain . . . .").

"An ALJ is permitted to reject a claimant's subjective testimony as long as he or she provides sufficient reasons for doing so." *Prokopick*, 272 Fed. App'x at 199 (citing *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999)).

When evaluating a claimant's subjective allegations of pain or other symptoms, an ALJ utilizes a two-step process. Soc. Sec. Ruling 16-3p, 2017 WL 5180304, at *2 (revised Oct. 25, 2017). First, the ALJ must determine whether there is a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. *Id.* at *3; *see also* 20 C.F.R. § 404.1529(b). A claimant cannot be found to be "disabled based on alleged symptoms alone." Soc. Sec. Ruling 16-3p, 2017 WL 5180304, at *4.

Once the ALJ has found that a medically determinable impairment has been established, the ALJ must then evaluate the claimant's allegations about the intensity, persistence, or functionally limiting effects of his or her symptoms against the evidence of record. *Id.* This evaluation requires the ALJ to consider "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and

other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.*

Here, in evaluating the plaintiff's symptoms, the ALJ expressly considered and extensively discussed both the medical and non-medical evidence in the record. (Tr. 21–25.) This included the plaintiff's statements regarding the limiting effects of his symptoms. Based on his consideration of the whole record, the ALJ properly concluded that, while Reagen's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 22.)

Although Reagen quibbles with the outcome of the ALJ's analysis of the evidence of record, it is clear that the ALJ properly evaluated the claimant's symptoms in accordance with the applicable regulations, and that the ALJ reasonably concluded that, notwithstanding the claimant's subjective complaints of pain and other symptoms, the evidence as a whole did not support physical or mental limitations in excess of those set forth in the ALJ's RFC determination. While this same evidence

might have also reasonably supported the adoption of substantially greater limitations, it did not compel such a finding.

Accordingly, we find the ALJ's evaluation of the subjective evidence of the plaintiff's symptoms is supported by substantial evidence and was reached based upon a correct application of the relevant law.

## III. CONCLUSION

Based on the foregoing, we conclude that the Commissioner's finding that Reagen was not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. Accordingly, the Commissioner's decision denying disability benefits is **AFFIRMED**.

An appropriate Order follows.

Dated: March 31, 2024          *s/Joseph F. Saporito, Jr.*
                              JOSEPH F. SAPORITO, JR.
                              Chief United States Magistrate Judge